UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

KENNETH CONRAD,                                  Case No. 12-CV-2819 (PJS/FLN)

                          Plaintiff,

v.                                                               ORDER

XCEL ENERGY, INC.,

                          Defendant.

---

Peter Christian and Lawrence P. Schaefer, SCHAEFER LAW FIRM, LLC, for plaintiff.

Michael J. Moberg and Michael C. Wilhelm, BRIGGS AND MORGAN, P.A., for defendant.

Kenneth Conrad filed this action in state court against his former employer, defendant Xcel Energy, Inc. ("Xcel"),[1] asserting state-law claims of defamation, tortious interference with contract relations, tortious interference with prospective business relations, and blacklisting. Xcel removed the case to federal court on the ground that Conrad's tortious-interference and blacklisting claims are completely preempted under § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

This matter is before the Court on Xcel's motion to dismiss and Conrad's motion to remand for lack of jurisdiction. For the reasons stated below, Xcel's motion to dismiss is granted in part, Conrad's motion to remand is denied, and the Court declines to exercise supplemental jurisdiction over Conrad's remaining state-law claims.

---

[1]Xcel contends that the proper defendant is Northern States Power Company, d/b/a Xcel Energy ("NSP"). There is no dispute, though, that both Xcel and NSP are Minnesota corporations (and that Conrad is a Minnesota citizen), and that therefore there is no diversity jurisdiction. In light of the Court's disposition of this case, the Court need not address which entity is the proper defendant.

## I. BACKGROUND

For present purposes, the parties have treated the complaint's factual allegations as true. The Court will do likewise. The Court notes, however, that those factual allegations are often unclear — sometimes, the Court suspects, strategically unclear — and thus the Court's summary of the facts will necessarily be incomplete.

According to the complaint:

Conrad is a journeyman lineman who was employed by Xcel from January 2001 to May 2009, when he resigned to pursue a fulltime teaching position with the Missouri Valley Line Apprenticeship Program ("Missouri Valley"). Compl. ¶¶ 6-8. Conrad left Xcel as an employee in good standing and after giving Xcel proper notice. Compl. ¶ 8. About a month later, Conrad's former girlfriend, Fiona Mann, falsely reported to various Xcel management personnel that Conrad had been involved in a copper-theft ring. Compl. ¶ 9.

Xcel conducted an extensive investigation into Mann's accusations. Compl. ¶ 11. Xcel also notified the Inver Grove Heights Police Department of Mann's accusations — and, in response, the Department obtained and executed a search warrant for Conrad's home. Compl. ¶¶ 11-12. The search revealed no evidence of wrongdoing. Compl. ¶ 12. Xcel security personnel also went to Conrad's cabin, peered into the windows, and questioned Conrad's neighbor. Compl. ¶ 15. These investigatory efforts apparently yielded no evidence that Conrad had been involved in stealing copper.

Xcel took no action against Conrad, but it terminated the employment of three of his alleged co-conspirators. Compl. ¶¶ 16-18. All three grieved their terminations; two prevailed, and the third lost, but not because he was found to have stolen copper. Compl. ¶ 17.

Not to be deterred, Mann continued her campaign against Conrad.  In May 2010, Mann forged a letter on Xcel letterhead and sent the letter to Missouri Valley, Conrad's employer at the time.  In the letter, Mann posed as an employee of Xcel's security department and told Missouri Valley that Conrad was under investigation by Xcel and Ramsey County.  Compl. ¶ 19.  Missouri Valley informed Xcel of the letter.  Compl. ¶ 19.

In January 2011, Conrad left Missouri Valley to return to construction work.  Compl. ¶ 21.  According to the complaint, Conrad was "referred out for Xcel" several times at various jobsites over the ensuing months.  Compl. ¶¶ 21-23.  (It is not clear whether Conrad was employed by Xcel during this time or was instead working as an independent contractor at Xcel jobsites.)  Conrad "demonstrat[ed] strong performance in substation work," Compl. ¶ 21, and "received high praise from his supervisors," Compl. ¶ 23.  In May 2011, "Xcel gave Mr. Conrad a foreman position in a Minneapolis service center on a distribution crew."  Compl. ¶ 21.  (Again, it is not clear whether this means that Conrad was hired by Xcel, or promoted by Xcel, or asked to lead a distribution crew as an independent contractor.)

While Conrad was working for or with Xcel in May 2011, Conrad ran into his former Xcel supervisor.  Compl. ¶ 24.  Two weeks later, Conrad was "escorted . . . off of the Xcel worksite he was assigned to."  Compl. ¶ 25.  Conrad's supervisor said that he was acting at the behest of the Xcel Workforce Relations Department.  Compl. ¶ 25.  In June 2011, Xcel told Conrad's union representative at the International Brotherhood of Electrical Workers, Local 160 ("IBEW") that Conrad was banned from all Xcel jobsites.  Compl. ¶ 28.

Conrad and the IBEW filed a grievance alleging wrongful termination.  Compl. ¶ 30.  Shortly thereafter, Donovan Construction ("Donovan") hired Conrad to work as a foreman.

Compl. ¶ 31.  But Conrad was forced to leave his position with Donovan a few months later,

because Xcel refused to permit Conrad to work on its distribution jobsites in the Twin Cities

area.  Compl. ¶ 32.  (Apparently, much of Donovan's work is done as a contractor at Xcel

jobsites.)  Before Conrad left Donovan, the president of the company confirmed with Xcel that

Conrad was banned from Xcel's distribution jobsites.  Compl. ¶ 33.

In August 2011, Conrad's union representative asked Xcel to reconsider the ban.  Compl.

¶ 34.  Xcel sent an email to the representative in which it "respectfully den[ied] their grievance,"

which Conrad interpreted to be a denial of both his formal grievance and his union

representative's informal request.  Compl. ¶ 35.  As a result of the ban, Conrad has had extreme

difficulty finding work.[2]  Compl. ¶¶ 36-37.

## II.  ANALYSIS

### A.  Standard of Review

Conrad moves to remand, arguing that the Court lacks subject-matter jurisdiction over

this case.  As the removing party, Xcel bears the burden of establishing federal jurisdiction.

*Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005).  Because there is no dispute

that the parties are not diverse, Xcel must establish federal-question jurisdiction.

Ordinarily, the presence or absence of federal-question jurisdiction is determined under

the "well-pleaded complaint" rule, which requires that the federal question appear on the face of

the complaint.  *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012) (2-1

_____

[2]In addition to these allegations, Conrad alleges that Xcel personnel defamed him at
various times.  Because Xcel does not contend that Conrad's defamation claim is preempted and
because the Court is remanding that claim, the Court does not describe Conrad's defamation
allegations here.

decision).  A federal *defense* — even the defense of federal preemption — does not create

federal jurisdiction.  *Id.*  There is an exception to the well-pleaded complaint rule, however, in

cases of "complete" preemption.  A federal court can exercise jurisdiction over a state-law claim

when a federal statute "'so completely pre-empt[s] a particular area that any civil complaint

raising this select group of claims is necessarily federal.'"  *Id.* (quoting *Metro. Life Ins. Co. v.

Taylor*, 481 U.S. 58, 65 (1987)).

"The complete pre-emption corollary to the well-pleaded complaint rule is applied

primarily in cases raising claims pre-empted by § 301 of the LMRA."  *Caterpillar Inc. v.

Williams*, 482 U.S. 386, 393 (1987).  Section 301(a) creates a federal cause of action for "[s]uits

for violation of contracts between an employer and a labor organization representing employees

in an industry affecting commerce . . . ."  29 U.S.C. § 185(a).  Congress enacted § 301 to provide

a uniform body of federal common law to resolve labor disputes.  *Trs. of the Twin City

Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir.

2006).

For this reason, § 301 completely preempts any state-law claim for breach of a collective-

bargaining agreement ("CBA").  *Caterpillar Inc.*, 482 U.S. at 393-94.  Such claims, even when

pleaded as state-law breach-of-contract claims, are considered to arise under federal law.  *Id.*

at 386-87.  Over time, the Supreme Court has broadened the scope of § 301 preemption to

include not only claims for breach of a CBA, but also claims that substantially depend on an

interpretation of a CBA.  *Williams v. Nat'l Football League*, 582 F.3d 863, 874 (8th Cir. 2009).

Xcel contends that Conrad's claims of tortious interference with contract relations, tortious interference with prospective business relations, and blacklisting are completely preempted by § 301.  The Court considers each claim in turn.

### B.  Tortious Interference With Contract Relations (Count II)

In Count II of his complaint, Conrad alleges that Xcel tortiously interfered with his employment contract with Donovan Construction.  (The Court will refer to this as Conrad's "contract-relations" claim to distinguish it from his other tortious-interference claim.)  Although Conrad avoided saying so in both his complaint and his brief, he acknowledged when pressed at oral argument — albeit obliquely — that he was a union employee of Donovan and that his employment relationship with Donovan was therefore governed by a CBA.

Given that concession, it initially appeared to the Court that Conrad's contract-relations claim was completely preempted by § 301.  After all, Minnesota courts routinely recite that plaintiffs must prove the intentional procurement of a contract's breach in order to recover on a claim for tortious interference with contract.  *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994); *Bebo v. Delander*, 632 N.W.2d 732, 738 (Minn. Ct. App. 2001).  Determining whether Xcel intentionally procured a breach of the CBA obviously entails determining whether the CBA was breached, and determining whether the CBA was breached obviously entails interpreting the terms of the  CBA.  Thus, Conrad's contract-relations claim — at least as initially understood by the Court — would seem to be completely preempted under § 301.[3]

---

[3]*See Oberkramer v. IBEW-NECA Serv. Ctr., Inc.*, 151 F.3d 752, 756 (8th Cir. 1998) (affirming dismissal of tortious-interference-with-contract claim as preempted because "[r]esolution of this claim would require a determination of whether Davis caused IBEW to breach the collective bargaining agreement"); *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620,

(continued...)

At oral argument, however, Conrad pointed the Court to *Nordling v. Northern States Power Co.*, 478 N.W.2d 498, 505 (Minn. 1991), which held that a plaintiff may sue for tortious interference with an at-will employment relationship.  The Court did not at first understand Conrad's reference to this case.  It appeared that Conrad was claiming to have some kind of at-will or extra-contractual relationship with Donovan, which did not make sense (given the existence of the CBA) and which Conrad had not clearly alleged or explained.

Having read *Nordling*, however, the Court now understands Conrad's contract-relations claim to be different from the claim that the Court initially thought he was making.  Conrad contends that, despite the usual formulation of the elements of a contract-relations claim — in particular, the recitation of the element of intentional procurement of a contract's breach — it is, in fact, not always necessary for a plaintiff to prove that a contract was *breached*.  After all, an employer who terminates an at-will employee has not breached any contract; to the contrary, an employer can terminate an at-will employee at any time for any reason (or even for no reason). *Sipe v. STS Mfg., Inc.*, 822 N.W.2d 2, 7 (Minn. Ct. App. 2012).  Nevertheless, the Minnesota Supreme Court held in *Nordling* that the at-will relationship is deserving of protection from unjustified outside interference:  "The at-will employment subsists at the will of the employer and employee, not at the will of a third party meddler who wrongfully interferes with the contractual relations of others."  *Nordling*, 478 N.W.2d at 505.

---

[3](...continued)
624 (8th Cir. 1989) (tortious-interference-with-contractual-relations claim preempted because it required determination of whether employer could discharge plaintiff under the CBA); *but see Meyer v. Schnucks Mkts., Inc.*, 163 F.3d 1048, 1051 (8th Cir. 1998) (2-1 decision) (holding that a tortious-interference-with-business-relationship claim was not preempted).

Given that Minnesota courts protect an at-will employee from a tortiously procured discharge even though that discharge does not breach any contract, it is logical to conclude that Minnesota courts would also protect someone who is *not* an at-will employee because he is covered by a CBA from a tortiously procured discharge even though that discharge does not breach the CBA. The logic of this conclusion is underscored by the fact that Minnesota courts protect a business expectancy from tortious interference even when that expectancy is not intended to ripen into a contract. *See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 826 N.W.2d 816, 825 (Minn. Ct. App. 2013).

In any event, in determining whether this case was properly removed to federal court, it is not this Court's task to determine whether Conrad has stated a valid claim for relief under state law. Instead, this Court must determine whether Conrad's state-law claim — valid or not — is completely preempted by § 301. Based on its current understanding of Conrad's contract-relations claim, the Court finds that the claim is not completely preempted.

Conrad alleges that Xcel acted "with the intent to procure Mr. Conrad's termination or forced resignation" from Donovan. Compl. ¶ 56. Conrad does not, however, contend that Donovan breached the CBA. Indeed, the Court expects that Conrad will readily concede that the CBA was *not* breached, either because Conrad himself made the decision to quit his job at Donovan or because Donovan had "just cause" to terminate Conrad, given that Xcel would not allow Conrad to enter its jobsites.

In short, the Court understands Conrad's claim to be that Xcel caused Donovan to terminate him, and that Xcel's interference was tortious even though Donovan breached no contract. Assuming that this is in fact Conrad's claim, then adjudicating his claim does not

require the interpretation of any provision of any CBA.  Instead, the focus of the judge or the jury will be on the purely factual issues of the motives and justification for Xcel's conduct. *Kjesbo*, 517 N.W.2d at 588 ("Ordinarily, whether interference is justified is an issue of fact, and the test is what is reasonable conduct under the circumstances."); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (determining whether employer unlawfully discharged employee for exercising worker's-compensation rights was a purely factual issue pertaining to the conduct and motivation of the employer that did not require interpretation of the CBA).

The Minnesota Supreme Court has made clear that if Conrad proves that Xcel caused Donovan to terminate him, Xcel will have the burden of proving that its interference in the employment relationship was justified.  *Kjesbo*, 517 N.W.2d at 588.  Xcel has implied that it may argue that its interference was justified because *its* CBA with the IBEW gave it the unfettered right to exclude workers from its jobsites.  Such an argument would seem to be meritless.  The question here is not whether Xcel has the general right to exclude people from its property — of course it does, as does every other property owner — but whether Xcel violated the limitations that the common law places on its *exercise* of that right.  Just as the Minnesota Human Rights Act prohibits Xcel from exercising its property rights to exclude only African-Americans from its jobsites — no matter the contents of any CBA to which Xcel is a party — so, too, does Minnesota tort law prohibit Xcel from exercising its property rights to wrongfully interfere in Conrad's employment relationship with Donovan.  No CBA can exempt Xcel from the statutory or common law of Minnesota, and thus adjudicating Conrad's contract-relations claim will not require the interpretation of any CBA.

Moreover, even if Xcel does argue that its interference with the Conrad-Donovan employment relationship was justified because of something found in Xcel's CBA with the IBEW, Xcel would be using the CBA defensively, and "the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule." *Caterpillar Inc.*, 482 U.S. at 398.  While a § 301 defense may mean that a state-law claim is *preempted*, it does not mean that the state-law claim is *completely preempted* so as to give rise to federal-question jurisdiction.  It simply means that a state court will dismiss the claim as being preempted by federal law, just as state courts routinely dismiss state-law claims as being preempted by federal law.  *See Williams v. Nat'l Football League*, 598 F.3d 932, 935-36 (8th Cir. 2009) (Colloton, J., dissenting from denial of rehearing en banc) (discussing the difference between "ordinary" § 301 preemption and "complete" § 301 preemption).

Not long ago, the Seventh Circuit explained (albeit in dicta) why a tortious-interference claim similar to Conrad's is not preempted:

> Suppose that . . . [defendant], acting from entirely private motives (such as a romantic interest in [plaintiff]'s wife), had framed [plaintiff] for the theft, fooling the union and [the employer] and thus . . . dooming [plaintiff].  It seems odd to think that a suit against [defendant] would be barred by the [LMRA].  The employer would not be involved in the suit, and the terms of the collective bargaining contract — even the fact that there was such a contract — would be irrelevant.

*Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 726 (7th Cir. 2000).  The Court finds this analysis persuasive.  Because Conrad is not claiming that any CBA was breached, and because his claim (at least as the Court understands it) will not require the interpretation of any provision of any CBA, Conrad's contractual-relations claim is not completely preempted under § 301.

### C.  Tortious Interference with Prospective Business Relations (Count III)

The Court comes to a different conclusion with respect to Conrad's claim for tortious interference with prospective business relations.[4]  Conrad alleges that, as a union member, he has a reasonable expectation of obtaining contract work every time the IBEW provides his name to a prospective employer.  Compl. ¶ 60.  Conrad further alleges that Xcel tortiously interferes with this reasonable expectation by banning Conrad from its jobsites.  Compl. ¶ 62.  This claim is very similar to one that the Eighth Circuit recently found to be preempted under § 301.  *See Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*, 598 F.3d 454 (8th Cir. 2010).

In *Holschen*, the plaintiff brought a claim for interference with a valid business expectancy against a union, alleging that a union official retaliated against him by not referring his name to prospective employers.  *Id.* at 458.  The Eighth Circuit explained that the plaintiff's

---

[4]The Minnesota Court of Appeals recently confirmed that Minnesota recognizes tortious interference with prospective advantage as a valid tort claim and acknowledged that this claim goes by many names:

> . . . Minnesota recognizes tortious interference with prospective advantage, also referred to as tortious interference with prospective economic advantage, tortious interference with business expectancy, wrongful interference with business relations or relationships, tortious interference with prospective contractual relations or relationships, and wrongful interference with prospective contractual relations or relationships, as a valid tort claim.

*Gieseke ex rel. Diversified Water Diversion, Inc.*, 826 N.W.2d at 825.  Elsewhere in the opinion the court also refers to the claim as "'interference with prospective business relations.'"  *Id.* (quoting *Hough Transit, Ltd. v. Nat'l Farmers Org.*, 472 N.W.2d 358, 361 (Minn. Ct. App. 1991)).

claim depended on interpreting the CBAs between the union and the prospective employers to determine whether the plaintiff in fact had a valid business expectancy arising out of the CBAs:

> If the CBAs gave Holschen something more than a mere hope of a business relationship with prospective employers, the Union's duty to refrain from interfering with his valid business expectancy would arise from the CBAs. Conversely, if the CBAs did not give rise to a valid business expectancy between Holschen and prospective employers, the Union would have no corresponding duty to refrain from interfering with such an expectancy. Either way, the resolution of Holschen's state law claim would depend upon the meaning of the CBAs, because the CBAs would have to be examined to determine both (1) the extent of the Union's duties to its members and (2) the scope of a union member's contractual or business relationship with prospective employers.

*Id.* at 461.

Conrad conceded at oral argument that the IBEW does not refer its members to a prospective employer unless that employer is in a collective-bargaining relationship with the IBEW. Any expectancy that Conrad has to be referred for jobs, therefore, could only arise out of a CBA. As in *Holschen*, then, it is necessary to look to the referral process in the CBA to determine whether Conrad in fact has a reasonable expectancy of economic advantage based on the referral process. *See Harbor Broad., Inc. v. Boundary Waters Broadcasters, Inc.*, 636 N.W.2d 560, 569 (Minn. Ct. App. 2001) (to prevail on a claim for tortious interference with business expectancy, a plaintiff must prove the existence of a reasonable expectation of economic advantage or benefit).

Conrad argues that *Holschen* is distinguishable because in *Holschen* the plaintiff was suing the union, whereas in this case Conrad is suing his former employer. That distinction does not change the fact that Conrad must prove that he has a reasonable expectancy of economic advantage and that, as in *Holschen*, the only source of that expectancy is a CBA. *Holschen*

dictates that Conrad's claim for tortious interference with prospective business relations is completely preempted by § 301.

### D.  Blacklisting (Count IV)

Finally, Conrad brings a claim of blacklisting under Minn. Stat. §179.60.[5] Section 179.60 provides, in relevant part, that it is "unlawful for any company or corporation, or any agent or employee thereof, to blacklist any discharged employee, or by word or writing seek to prevent, hinder, or restrain a discharged employee, or one who has voluntarily left its employ, from obtaining employment elsewhere."  In *Joyce v. Great Northern Railway Co.*, 110 N.W. 975 (Minn. 1907), the Minnesota Supreme Court interpreted the predecessor of § 179.60 to require that, for an employer to be held liable for interfering with a former employee's attempt to get another job, the employer's action must be without just cause or excuse.  *Id.* at 978.

Although Conrad's blacklisting claim is conceptually similar to his claim for tortious interference with prospective business relations, Xcel does not contend that Conrad must prove that he had a valid business expectancy to recover under § 179.60.  As a result, there is no need to look to a CBA to determine whether Conrad had such an expectancy.  Instead, Xcel contends only that the blacklisting claim is preempted because it is necessary to interpret various CBAs to

---

[5]In his complaint, Conrad cites Minn. Stat. § 170.60.  It appears that this is a typographical error, and that he meant to cite Minn. Stat. § 179.60.

Conrad also cites Minn. Stat. § 179.12, which makes it an unfair labor practice for an employer "to distribute or circulate a blacklist of individuals exercising a legal right or of members of a labor organization for the purpose of preventing individuals who are blacklisted from obtaining or retaining employment[.]"  So far as the Court can tell, no Minnesota court has ever addressed or construed the "blacklisting" provision of Minn. Stat. § 179.12, despite the fact that it has been part of Minnesota law since at least 1939.  *See* 1939 Minn. Laws. ch. 440 § 12(f) (p. 993).  The Court will therefore follow the parties' lead and focus on § 179.60.

determine whether Xcel's conduct was justified.  According to Xcel, these CBAs give any employer to whom Conrad is referred by the IBEW (including Xcel) an unqualified right to reject that referral.

Putting aside the fact that, as noted earlier, a § 301 *defense* does not completely preempt a state-law claim, Xcel's argument is illogical.  Section 179.60 does not limit the right of the *prospective employer* to reject a referral of Conrad; it limits the right of *Xcel* to *induce* a prospective employer to reject a referral of Conrad.  Nothing in any CBA purports to exempt — or could exempt — Xcel from the limitations that § 179.60 places on its ability to induce other employers not to hire Conrad.

In short, Conrad's blacklisting claim turns on *why* Xcel excludes Conrad from its jobsites — the practice that, according to Conrad, effectively blacklists him.  The answer to that question could be that Xcel reasonably believes that Conrad was involved in a copper-theft ring, in which case Xcel's actions are likely justified.  Alternatively, the answer could be that Xcel has no reasonable basis for such a belief and that instead Xcel personnel decided to help Conrad's ex-girlfriend pursue a personal vendetta against him, in which case Xcel's actions are likely not justified.  Either way, no judge or jury will have to interpret any provision of any CBA to resolve Conrad's blacklisting claim.  *See Lingle*, 486 U.S. at 407.  The Court therefore finds that Conrad's blacklisting claim is not completely preempted under § 301.

### E.  Xcel's Motion to Dismiss

Having concluded that Conrad's claim of tortious interference with prospective business relations is completely preempted by § 301, the Court finds that it has federal-question jurisdiction over that claim.  Conrad does not dispute that, if his tortious-interference claim is

CASE 0:12-cv-02819-PJS-FLN   Document 20   Filed 04/05/13   Page 15 of 16

completely preempted, it should be dismissed on the merits, either because it is untimely under 29 U.S.C. § 160(b) or, alternatively, because it fails to state a claim under § 301. The Court therefore grants Xcel's motion to dismiss Conrad's claim of tortious interference with prospective business relations.

With respect to Conrad's remaining state-law claims, however, the Court declines to exercise supplemental jurisdiction.[6] This case is in its very early stages, and the only claim over which the Court has original jurisdiction has been dismissed. Moreover, one of the three remaining claims — blacklisting — is based on two rarely cited provisions of Minnesota law, the interpretation of which is best left to state courts. Accordingly, remand is warranted. *See* 28 U.S.C. § 1367(c)(3); *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005); *St. John v. Int'l Ass'n of Machinists & Aerospace Workers, Local #1010*, 139 F.3d 1214, 1216 (8th Cir. 1998) ("if the remaining claims are not preempted, the court *may* exercise discretion to decline supplemental jurisdiction over those claims").

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

---

[6]Xcel contends that these claims are also subject to *Garmon* preemption under the National Labor Relations Act. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). *Garmon* preemption is not "complete," however, and therefore does not transform these state-law claims into federal claims over which this Court has original jurisdiction. *See, e.g.*, *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 805-06 (7th Cir. 2009); *Lontz v. Tharp*, 413 F.3d 435, 442-43 (4th Cir. 2005); *see also Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 n.3 (8th Cir. 2006) (*Garmon* "is unrelated to complete preemption under § 301 of the LMRA"). The Court therefore leaves the issue of *Garmon* preemption to the state court.

-15-

1.    Defendant's motion to dismiss [ECF No. 3] is GRANTED IN PART and

DENIED IN PART.

     a.    The motion is GRANTED with respect to Count III of plaintiff's

       complaint [ECF No. 1-1], and Count III is DISMISSED WITH

       PREJUDICE.

     b.    The motion is DENIED in all other respects.

2.    Plaintiff's motion to remand [ECF No. 11] is DENIED.

3.    Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental

jurisdiction over plaintiff's remaining claims.  Accordingly, those claims are

REMANDED to the Minnesota District Court, Fourth Judicial District.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  April 5, 2013                              s/Patrick J. Schiltz
                                   Patrick J. Schiltz
                                   United States District Judge